IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KITTIE H.,[1]

      Plaintiff,

  vs.

COMMISSIONER OF SOCIAL SECURITY,[2]

      Defendant.

Case No. 3:17-cv-01452-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Kittie H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not yet been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

## BACKGROUND

Plaintiff protectively filed an application for DIB on July 29, 2013. She alleged disability beginning October 28, 2010, due to degenerative neck disease, arthritis, past knee surgeries, high cholesterol, migraines, depression, panic attacks, and anxiety. Her application was denied initially and upon review. Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held October 30, 2015. She was represented by an attorney. A vocational expert ("VE") also appeared and testified at the hearing. On February 25, 2016, the ALJ issued a decision finding Plaintiff not disabled through December 15, 2015, the date last insured. On July 12, 2017, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue,* 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner

must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" during the period from her alleged onset date of October 28, 2010 through her date last insured of December 31, 2015. Tr. 22; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* at § 404.1571. At step two, the ALJ found that plaintiff suffers from the following severe impairments: "spine disorder and migraines." Tr. 22-24; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* § 404.1525; *id.* § 404.1526.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The ALJ found that plaintiff retained the RFC to

> perform light work as defined in 20 C.F.R. § 404.1567(b) except the [plaintiff] is limited to frequent climbing of stairs, ramps, ladders, ropes, and scaffolds. [Plaintiff] is limited to occasional overhead reaching bilaterally. [Plaintiff] is limited to occasional exposure to extreme heat, extreme cold, vibrations, and moderate noise.

Tr. 24.

At step four, the ALJ concluded plaintiff could perform her past relevant work as a server. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), (h); *id.* at § 404.1565. Accordingly, the ALJ found plaintiff was not disabled during the relevant period and denied her application. *Id.*

## DISCUSSION

As an initial matter, the Commissioner concedes that the ALJ committed error at step four and that the case should be remanded.

At step four, the ALJ determined that plaintiff was capable of performing her past relevant work as a server. Tr. 28. In making her determination, the ALJ noted that the VE testified that plaintiff "would have been able to perform this job as generally performed in the Dictionary of Occupational Titles" ("DOT"). *Id.* The ALJ adopted the VE's testimony because the ALJ found that it was consistent with the information in the DOT and plaintiff's RFC. *Id.*

Both parties agree that this was error because the hypotheticals that the ALJ posed to the VE at the hearing were incomplete. The RFC limits plaintiff to "occasional exposure to . . . moderate noise," Tr. 24, but the ALJ asked the VE whether

a person "limited to noise at a moderate level" could perform work as a server without specifying the duration of that exposure. Tr. 60. The VE responded that the person would be able to work as a server, as the DOT provides that work as server requires exposure to a moderate level of noise. *Id.*; *see also* DOT 311.477-030.

"If the hypothetical does not reflect all of the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). Thus, the ALJ's step four determination was not based on substantial evidence. *Id.*

The parties dispute whether further proceedings are required, or whether the case ought to be remanded for an immediate award of benefits.

Plaintiff also alleged that the ALJ erred in (1) determining that other impairments alleged by plaintiff were either not medically determinable or not severe; (2) finding that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 1.04A in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) finding that plaintiff's testimony was partially credible; (4) rejecting testimony of plaintiff's ex-husband and (5) rejecting certain medical opinions. Thus, before determining what type of remand is appropriate, I address each additional assignment of error in turn.

## I.    *Step Two*

Plaintiff argues that the ALJ erred by determining that certain impairments that she alleged were either not medically determinable or not severe.   Plaintiff

asserts that, in addition to spinal disorder and migraines, the ALJ should have found that she had the following severe impairments: depression and anxiety, degenerative joint disease of the left shoulder, degenerative joint disease of bilateral knees, hyperlipidemia, and left hip bursitis.

At step two, a claimant must make a threshold showing that he or she has medically determinable impairments that significantly limit his or her ability to perform basic work activities. *See Bowen,* 482 U.S. at 145; 20 C.F.R. § 404.1520(c). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests—as well as symptoms," a claimant's own perception or description of his or her physical or mental impairment. *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir.2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1508.

An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original). The ALJ is required to consider the combined effect of all of the claimant's impairments on his or her ability to function. *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a

claimant has a severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-9p, 1996 WL 374184 (July 2, 1996). Where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## A. *Mental Health*

The ALJ found that plaintiff had no medically determinable mental health impairments during the relevant period. Tr 24. The ALJ observed that claimant testified to having mental health symptoms, has been on medication for anxiety, and reported symptoms and received treatment for anxiety and depression-related symptoms. Tr. 23. However, the ALJ also observed that plaintiff had not been diagnosed with a mental impairment by an acceptable medical source, reported that her symptoms improved with treatment, and has not "had emergency room visit, hospitalization or formal psychiatric evaluation for mental impairments." *Id.* The ALJ assigned great weight to the state agency psychological consultants' finding that plaintiff had no medically determinable mental impairments because "they supported their opinion with the appropriate explanation" and were supported by the record as a whole. Tr. 23-24.

Here, the record does not include evidence of the kind of objective testing usually relied upon to establish a mental impairment. Plaintiff's mental health treatment was performed exclusively by master's level behaviorists who were not

acceptable medical sources for purposes of establishing a medically determinable impairment at step two. 20 CFR § 404.1502(a)(2). Moreover, plaintiff's depression and anxiety diagnoses were made by physician's assistants, who were also not acceptable medical sources. Therefore, plaintiff lacks the clinical or diagnostic evidence necessarily to establish a medically determinable impairment, and substantial evidence supports the ALJ's decision not finding such impairments based on the agency psychologists' reports.

Although plaintiff's diagnosing physician's assistants were not acceptable medical sources at the time plaintiff's claim was filed, the regulations now provide that licensed physician's assistants are acceptable medical sources for claims filed after March 27, 2017. 20 C.F.R. § 404.1502(a)(8). Given that change in policy, the Court recommends that on remand, the ALJ should consider whether it is appropriate to treat plaintiff's mental impairment as medically determinable and assess whether it is severe.

### B.   *Other Impairments*

Plaintiff argues that the ALJ improperly failed to find the following diagnoses were severe impairments: degenerative joint disease of the left shoulder and knees, hyperlipidemia, and left hip bursitis. With the exception of plaintiff's bursitis, the ALJ expressly found those impairments were not severe at step two because they caused no more than minimal effect on plaintiff's ability to perform basic activities. Tr. 23. Plaintiff's conclusory assertions to the contrary are unpersuasive. Plaintiff does not advance any functional limitation related to these impairments that the ALJ

failed to consider in the sequential analysis. The ALJ considered all of plaintiff's impairments at the subsequent steps of the analysis and in her summary of the medical evidence. Tr. 24-28. Thus, even if the ALJ erred in finding one of these diagnoses non-severe at step two, that error was harmless. *Lewis*, 498 F.3d at 911.

## II.   *Step Three*

Plaintiff argues that the ALJ erred in determining that her impairment or combination of impairments did not meet or medically equal the severity of Listing 1.04A. When an individual's impairment or combination of impairments meets or equals the level of severity described in the listings and the duration requirement in 20 C.F.R. § 404.1509, disability will be found on the basis of the medical facts alone in the absence of evidence to the contrary. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). To meet a listing, the claimant must present medical findings that satisfy all of the components of the listing. *Id.* at 1174. Listing 1.04A details the following criteria: a "[d]isorder of the spine," "resulting in compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. § 404, Subpt. P, App. 1.

The ALJ explained that plaintiff's "degenerative disc disease/back impairment/cervical disease fails to meet the requirements of listing section 1.04 or any other relevant listing section because [plaintiff] lacks the requisite motor and

sensory deficits[.] . . . Diagnostic testing has revealed only mild degenerative disc disease and normal EMG and nerve conditions studies." Tr. 24.

Plaintiff argues that her impairments meet or equal the severity described in Listing 1.04A by pointing to medical evidence in the record establishing that she has degenerative disc disease with nerve root compression, Tr. 326, 419-21, 466, and limited range of motion of the spine, Tr. 325, 332-34, 340, 465, 472, 473. The evidence is somewhat equivocal of the point of plaintiff's motor loss. In November 2013, Dr. Hahn examined plaintiff and observed that she had normal muscle bulk and tone, no atrophy, and normal strength. Tr. 334. Similarly, in January 2014, plaintiff's primary care provider, Heather Davidson, P.A., observed that plaintiff had normal strength. Tr. 486. Then, in September 2014, Davidson observed decreased strength in plaintiff's left shoulder. Tr. 473. However, as the ALJ found, the record demonstrates that plaintiff lacks the requisite sensory deficits to meet or equal Listing 1.04A, because diagnostic testing reveals that plaintiff has normal sensation in her upper extremities. Tr. 440. "[F]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is medically equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis added). Because plaintiff did not do so for the sensory requirements, the ALJ did not err.

### III. *Plaintiff's Symptom Testimony*

At the hearing and in a February 2012 function report, plaintiff testified about symptoms related to her back, shoulder, and knee problems, migraines, and mental health. Tr. 47-54, 232-39. In her decision, the ALJ observed that plaintiff "testified to having sharp stabbing pain in the neck and left shoulder, ache, tingling, muscle spasms, burning sensation, and headaches." Tr. 25. The ALJ also noted that plaintiff elaborated that she has pain every day, that her "tingling sensation" was "from the shoulder down" and her "neck spasm is at times so intense that she has a hard time concentrating." *Id.* Finally, the ALJ noted that plaintiff reported "some days, she is too slow and does not do anything[,]" she "has fatigue and needs to rest every one to four hours," and "she could not function when she has migraine headaches." *Id.* The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effect of her physical symptoms were "not entirely credible." *Id.*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of her symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude

that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engaged in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

With respect to plaintiff's spine disorder, the ALJ first reasoned that "the objective evidence does not substantiate the severity and their limiting effects as she alleged." Tr. 25. Although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2). Moreover, plaintiff argues that the ALJ erred in ignoring medical evidence of plaintiff's shoulder and knee impairments. Although the ALJ addressed the medical evidence concerning plaintiff's spine in detail, the ALJ only briefly referenced plaintiff's shoulder and knees. The ALJ noted that MRI testing did not support severe shoulder problems and that Dr. Hahn, an examining physician, diagnosed plaintiff with decreased shoulder range of motion but found her knees to be normal. Tr. 25. In doing so, the ALJ overlooked several medical records relevant to plaintiff's muscoskeletal pain. The ALJ's absence-of-evidence finding therefore cannot support the decision to doubt plaintiff's testimony about her symptoms.

Second, the ALJ reasoned that plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 26. Instead, the ALJ found plaintiff's daily activities

indicative of an ability to perform light work. *Id.* The ALJ noted that in function reports and at the hearing, plaintiff reported doing household chores like dishes, vacuuming, dusting, and laundry daily with occasional help from her ex-husband; caring for her dog; preparing meals twice a week; walking, driving, using a riding lawn mower, and riding bicycles; shopping and visiting family. *Id.* The ALJ did not mention that plaintiff testified that she needed to pace herself during her daily activities, to make sure that she did not cause spasms and related migraines and that she could not engage in hobbies that required her to put her head down, like knitting and jewelry making, for more than five minutes at a time. Tr. 50-51. However, even taking those limitations into account, plaintiff's reports demonstrate an ability to spend a substantial part of her day engaged in activities involving skills that can be transferred to light work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ permissibly found that activity level inconsistent with plaintiff's testimony about the severity of her symptoms.

With respect to migraines, the ALJ first reasoned that although the record contains "occasional, self-report of frequent headaches, "diagnostic testing does not support disabling symptoms." Tr. 26. As mentioned, this is a relevant factor, but cannot be a reason to discredit plaintiff's symptom testimony on its own.

Second, the ALJ reasoned that plaintiff had "no need for aggressive treatment modalities for pain relief." Tr. 26. The ALJ observed that, although plaintiff could not take prescription Maxalt because she could not afford the co-pay or Imitrex because of an adverse reaction, she found other prescriptions helpful and also used

over the counter medication to treat some of her headaches. *Id.* This is a valid reason to discount plaintiff's symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Additionally, the reasoning is supported by substantial evidence in the record. *See* Tr. 47-48 (testified that Propanolol helped to reduce the frequency of headaches), 339 (severe headache improved with Asprin), 340 (prescribed Propanolol because plaintiff could not take Maxalt or Imitrex), 341 (reported taking Ibuprofen to treat headaches).

Third, the ALJ reasoned that plaintiff's "daily activities do not match with severe debilitating migraines." Tr. 26. The ALJ properly relied on this rationale for the reasons explained above.

Finally, plaintiff argues that the ALJ erred in failing to consider her mental impairments. The regulations provide that an ALJ must consider all of a claimant's symptoms arising from a medically determinable impairment. 20 C.F.R. § 404.1529. As discussed in detail in section I above, the ALJ found that plaintiff did not have a medically determinable mental impairment. Thus, the ALJ was not required to consider symptoms related to a mental impairment in formulating the RFC.

In sum, the ALJ provided clear, convincing reasons to discredit plaintiff's statements about her physical limitations related to her back, shoulder, and knee problems and her migraines and was not required to consider plaintiff's mental health symptom testimony. However, on remand, if the ALJ decides it is appropriate to treat plaintiff's depression and anxiety diagnoses as bases for a medically

determinable mental impairment, the ALJ should reevaluate plaintiff's mental health symptom testimony.

## IV. Lay Witness Testimony

Mr. H. is plaintiff's ex-husband. On October 21, 2013, he provided a third-party function report. Tr. 273-80. At that time, they had known each other for over 31 years, lived together, and spent "most all of [their] time" together. Tr. 273. The ALJ observed that, in his report, Mr. H stated that plaintiff has poor attention, concentration, and ability to handle stress and that she has difficulty lifting, pulling, and pushing because she has migraines, spasms, and bad pain in her upper back and neck. Tr. 27.

The ALJ assigned Mr. H.'s statements "limited weight" because he "is not considered an acceptable medical source." *Id.* ALJ further reasoned that the mental limitations he described "do[] not match with the minimal longitudinal record" and that "the severity of physical symptoms" he described "are inconsistent with the findings of the diagnostic testing." Tr. 28.

Lay witness testimony regarding the severity of a claimant's symptoms or how impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).

That Mr. H was not an acceptable medical source is not a proper reason to discount a lay witness's testimony. The regulations specifically provide that lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 404.1513(d); *see also Dodrill,* 12 F.3d at 918–19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Mr. H.'s testimony was based on his personal observations of plaintiff's symptoms and ability to perform daily activities.

Nor could the ALJ discredit Mr. H's lay testimony about plaintiff's limitations because they were not corroborated by the medical records. *Taylor,* 659 F.3d at 1234; *Bruce v. Astrue,* 557 F.3d 1113, 1116 (9th Cir. 2009); *Smolen,* 80 F.3d at 1289 ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." (emphasis in original)).

However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony is harmless error. *Molina v. Astrue,* 674 F.3d 1104, 1122 (9th Cir. 2012). Because Mr. H. did not describe any physical limitations beyond what plaintiff described, and the ALJ validly rejected plaintiff's testimony, the ALJ's error was harmless. But, if on remand the ALJ decides to treat plaintiff's

mental impairment as medically determinable, the ALJ should reevaluate Mr. H.'s testimony regarding plaintiff's mental limitations.

## V.    *Medical Opinion Testimony*

Plaintiff argues that the ALJ erred in rejecting the opinions of plaintiff's medical sources, Dr. Hahn, M.D., and Ms. Shoup, MA QMHP.

### A.    *Dr. Hahn, M.D.*

Dr. Hahn examined plaintiff on November 27, 2013. Tr. 330. As relevant to this court's review, Dr. Hahn diagnosed plaintiff with "[s]houlder decreased range of motion" and opined that plaintiff's manipulative limitations included "reaching occasionally[.]" Tr. 334. The ALJ found that opinion "overly restrictive" and, instead, determined that plaintiff was limited to "occasional *overhead* reaching." Tr. 27 (emphasis added).

To reject the uncontradicted opinion of an examining doctor, an ALJ must state "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). However, Dr. Hahn's opinion regarding plaintiff's reaching limitations was contradicted by the opinions of reviewing physicians. Tr. 71 (no manipulative limitations), 82 (same), 93 (overhead reaching limitation), 107 (same). Thus, to reject Dr. Hahn's opinion, the ALJ needed to provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Plaintiff argues that the ALJ erred in discounting Dr. Hahn's opinion because the ALJ's reasoning fails to address the basis of that opinion. The ALJ explained that

the record "does not support more than a restriction to occasional overhead reaching" because "[plaintiff] has no hand, elbow, and wrist problems that would compromise her ability to reach all directions except for overhead reaching. She has no fine and motor skill limitations in the upper extremities that would diminish [plaintiff's] ability to constantly perform handling, fingering and feeling." Tr. 27. But Dr. Hahn explained that her reaching opinion was based on plaintiff's "shoulder pain and decreased range of motion." Tr. 334. The ALJ's decision does not explain how lack of hand, elbow, and wrist problems or limitations in fine and gross motor skills undermines Dr. Hahn's reasoning or directly respond to Dr. Hahn's reasoning in any way. Accordingly, the ALJ erred by failing to provide specific and legitimate reasons to reject Dr. Hahn's reaching opinion. *Nguyen*, 100 F.3d at 1464.

### B. *Ms. Shoup, MA QMHP*

Ms. Shoup has been plaintiff's treating therapist since September 2015. Tr. 493. She opined that plaintiff would need unscheduled breaks and would miss at least 16 hours of work per month. Tr. 491. She also rated plaintiff as markedly limited in maintaining attention and concentration for extended periods, accepting instructions and responding appropriately to criticism from supervisors, and getting allow with coworkers or peers without distracting them or exhibiting extreme behaviors. *Id.*

As a Qualified Mental Health Professional, Ms. Shoup is not an acceptable medical source under the Act. 20 C.F.R. §404.1502.[3] Rather, her testimony is

---

[3] Plaintiff asserts that Ms. Shoup should be considered an acceptable medical source because she is supervised by acceptable medical sources, but her supervisors did not co-sign Ms. Shoup's

evaluated as an "other source." Other source testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen*, 100 F.3d at 1467. To discount "other source" testimony, the ALJ must provide reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. Germane reasons must be specific. *Bruce*, 557 F.3d at 1116.

The ALJ rejected Ms. Shoup's opinions because (1) she began to treat plaintiff recently and had only a short treatment relationship her; (2) she is not an acceptable medical source; (3) she did not support her opinion about unauthorized absences and unscheduled breaks with appropriate clinical findings; and (4) the limitations she assessed were inconsistent with plaintiff's routine treatment and daily activities and not supported by the longitudinal record.

Although Ms. Shoup had only been treating plaintiff for about two and a half months when she rendered her opinions, they had been meeting weekly. Tr. 493. This, on its own, does not provide a reason to reject her opinions. Additionally, the fact that Ms. Shoup is not an acceptable medical source is not an independent reason to reject her opinions. Rather, it means that the ALJ need only provide specific and germane reasons to discredit them.

The ALJ's remaining reasons were not specific and germane. First, although Ms. Shoup's ultimate opinions were conveyed via checklist, the checklist is supported by Ms. Shoup's letter, Tr. 493-94, and by treatment records for the full period of time

---

assessment and there is no evidence in the record that they were actively involved in or working closely with Ms. Shoup on plaintiff's care.

that plaintiff participate in therapy at the OHSU Scappoose Clinic, which the ALJ also had access to and had reviewed. Second, the ALJ's boilerplate conclusions that Ms. Shoup's limitation opinions were inconsistent with plaintiff's treatment and activities or the longitudinal record were not sufficiently specific to provide a proper reason to discredit those opinions. Accordingly, the ALJ erred in rejecting Ms. Shoup's opinions.

## VI. *Type of Remand*

The Ninth Circuit precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Under the three-step "credit-as-true" doctrine, the reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5. 2016). Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (quotation marks omitted). Third, if the court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id* (quotation marks omitted).

Here, the first step is satisfied because the ALJ (1) failed to provide specific, legitimate reasons to reject Dr. Hahn's reaching limitation, (2) failed to provide specific, germane reasons to reject Ms. Shoup's opinions, and (3) did not include the

appropriate durational aspect of plaintiff's noise limitation in the hypotheticals posed to the VE.

At second step, however, the record is not fully developed or free from conflicts and ambiguities. For example, Dr. Hahn's and Ms. Shoup's opinions conflict with the opinions of the state agency consultants. Plaintiff argues that further proceedings would serve no useful purpose because her limitation to occasional exposure to moderate noise precludes her past relevant work as a server, and thus mandates a finding of disability. But, although the DOT provides that the job of a server requires exposure to a moderate level of noise, it does not specify the duration of that exposure. Thus, the record on this point is ambiguous and VE testimony is needed to determine if this limitation precludes plaintiff from performing her past relevant work. Accordingly, remand for further proceedings is the appropriate remedy.

On remand the ALJ shall reevaluate Dr. Hahn's and Ms. Shoup's opinions and either credit them as true and revise the RFC accordingly, or provide legally sufficient reasons for any portion that is rejected. Additionally, the ALJ shall obtain supplemental VE evidence regarding plaintiff's ability to perform her past relevant work with the limitations in her RFC, including occasional exposure to moderate noise. Finally, as mentioned, the Court recommends that the ALJ consider whether it is appropriate to treat plaintiff's mental impairment as medically determinable, assess whether it is severe, and reevaluate plaintiff's and Mr. H's testimony regarding plaintiff's mental symptoms.

## CONCLUSION

The Commissioner's decision is REVERSED and the case is REMANDED for further proceedings consistent with the Court's opinion.

IT IS SO ORDERED.

Dated this _30th_ day March of 2019.

_Ann Aiken_

Ann Aiken
United States District Judge